**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**APRIL ARMSTRONG**                                                                                           **PLAINTIFF**

**VS.**                                         **CASE NO. 3:15CV00294 PSH**

**CAROLYN W. COLVIN, Acting Commissioner,
   Social Security Administration**                                                           **DEFENDANT**

**ORDER**

Plaintiff April Armstrong ("Armstrong"), in her appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Colvin") to deny her claim for Disability Insurance benefits (DIB) and supplemental security income (SSI), contends the Administrative Law Judge ("ALJ") erred by: (1) incorrectly assessing her mental impairments; and (2) incorrectly considering her seizures. The parties have ably summarized the medical records and the testimony given at the administrative hearing conducted on March 10, 2014. (Tr. 27-42). The Court has carefully reviewed the record to determine whether there is substantial evidence in the administrative record to support Colvin's decision. 42 U.S.C. § 405(g).

*Administrative hearing:* At the outset of the administrative hearing, Armstrong testified she was 26 years old, with a high school education and a certified nurse's aide ("CNA") certificate. She stated she was working 10-15 hours a week as a server at the Dixie Café, having left her previous CNA job due to seizures. In the two and a half months she had been working at the Dixie Café, she had one seizure on the job. Armstrong identified seizures as the reason she cannot do full time

work. According to her, the seizures last from 30 seconds to five minutes, are preceded by migraine headaches, and typically require a day or two for her to recover. Armstrong noted the frequency of the seizures decreased when she changed her medication from Dilantin to Topamax. This change occurred in the 6-7 months prior to the hearing, and Armstrong estimated she had 5 or 6 seizures since the prescription change. (Tr. 27-37).

The ALJ posed a hypothetical question to the vocational expert, asking her to assume a worker of Armstrong's age and educational level who could perform light work but avoid work involving unprotected heights, dangerous moving machinery, the operation of motor vehicles[1], or the use of firearms. Further, because of depression, the ALJ asked the vocational expert to assume the worker would have the ability to perform work in a setting where interpersonal contact would be incidental to the work performed, the complexity of the tasks is learned and performed by rote, with few variables, little judgment required, and the supervision required is simple, direct, and concrete. The vocational expert indicated such a worker could not perform Armstrong's past relevant work as a CNA, but could perform the jobs of bakery racker or marking clerk. (Tr. 39-40).

*Medical records during the relevant period:* Armstrong's alleged onset date is October 23, 2012. As a result, the relevant period for disability purposes is from October 23, 2012, through August 27, 2014, the date of the ALJ's decision. Armstrong was seen by her treating neurologist, Dr. Kenneth Chan ("Chan") on July 2, 2013. Chan assessed her with epilepsy and migraines, and the treatment plan was to initiate Topamax in the upcoming weeks and to have Armstrong keep a headaches and seizure journal and return to the clinic in three months. (Tr. 383-385). In a review

---

[1] Armstrong testified she possessed a restricted driver's license, but that her brother drove her to and from work at the Dixie Café. (Tr. 30-31).

of Armstrong's systems, Chan noted she experienced back pain, blackouts, change in appetite, dizziness, headaches, irritability, loss of vision, nervousness, snoring and weakness. Chan found no depression or other symptoms. (Tr. 385). State agency physicians Takach and Sauer reviewed Armstrong's medical records in April and May of 2013 but did not examine her. The state agency physicians opined Armstrong could perform work at all exertional levels with limitations to accommodate her history of seizures.

*Medical records prior to the relevant period:* In January of 2010 Armstrong was treated at the emergency room for a seizure. (Tr. 407-16). She was seen by a neurologist, Dr. Demetrius Spanos ("Spanos"), on February 10, 2010. Her EEG was abnormal. (Tr. 401). Spanos suspected Armstrong suffered from epilepsy, noting a family history. Spanos prescribed Dilantin, instructed Armstrong to return in one month, and wrote she "could return to her job as a CNA without restriction based on the description of what she does." (Tr. 393). Armstrong was seen at the Jonesboro Church Health Center in April 2010, reporting she had a seizure 4-5 days earlier. The impression noted at the clinic was epilepsy and depression/anxiety, and she was prescribed Dilantin. (Tr. 467-468).

In July 2010 Armstrong was seen by consultative examiner Dr. Dennis Vowell ("Vowell"), who performed a Mental Diagnostic Evaluation and Evaluation of Adaptive Functioning. (Tr. 481-484). Vowell diagnosed Armstrong with major depressive disorder recurrent most recent episode moderate, with a GAF of 53-63. In describing the effects of Armstrong's mental impairments on her adaptive functioning, Vowell opined: (1) regarding daily activities, she does not drive, is able to complete basic household chores; (2) regarding her ability to communicate and interact in a socially adequate manner, she is capable of doing so but depression and anger may cause this ability

to deteriorate; (3) regarding her ability to cope with the mental/cognitive demands of basic work-like tasks, she "appeared to sustain a reasonable degree of cognitive efficiency" but mild to moderate stress might change that ability (Tr. 484); (4) regarding her ability to attend and sustain concentration on basic tasks, she displayed mild to moderate difficulty in this area; (5) regarding her ability to sustain persistence in completing tasks, she was adequate in this area; and (6) regarding her ability to complete work-like tasks within an acceptable time frame, she demonstrated the ability to do so.  Vowell's report was confusing in one respect – he found her "capable of managing her own finances" yet not able to manage funds without assistance.  (Tr. 484-485).

Armstrong was seen at the emergency room in January 2012 for complaints unrelated to migraines, depression, or seizures.  (Tr. 337-352).  In March 2012 she was seen by Dr. Barry Hendrix ("Hendrix"), who diagnosed her with epilepsy NOS and long-term use of medications.  When she returned to Hendrix at the end of May she reported no seizures but a new complaint of fatigue. Hendrix continued her on Dilantin.  In September 2012 Armstrong reported weekly seizures to Hendrix, who increased the dosage of Dilantin.  (Tr. 360-361).

Armstrong went to the hospital emergency room on October 2, 2012, reporting two seizures.  She was prescribed Keppra.  Later in October Hendrix was examined by neurologist Chan, on the referral of Hendrix.  Chan diagnosed epilepsy in October 2012, and directed that the Dilantin be decreased and the Keppra increased.

**Assessment of Armstrong's mental impairments:** Armstrong contends the ALJ erred in finding that she could perform unskilled work despite her major depressive disorder.  She urges the ALJ wrongly assessed Vowell's opinions.  There is no merit in this argument.  When Vowell examined Armstrong in July of 2010, he noted she was not currently receiving mental health

treatment, though she had participated in a diagnostic assessment years earlier.  Following Vowell's examination in 2010, Armstrong received no mental health care.  This period includes the more than two years leading up to her alleged onset date of October 23, 2012, and continuing through the relevant period, which ended on August 27, 2014.  The ALJ assigned "significant evidentiary weight" to Vowell's opinions in determining Armstrong had a severe impairment of depression.  (Tr. 16).  This was a generous assessment, given the age of Vowell's report and the fact that Armstrong did not allege depression as a disabling impairment.  We find no error in this regard.

      Generally, the ALJ stressed the positive findings in Vowell's report, while Armstrong focuses on a few findings which favor her cause, such as Vowell's opinion that she had mild to moderate difficulty in attention and concentration.  Viewed in its totality, Vowell's report does not strongly support Armstrong's view that she is disabled due to depression.  Further, the ALJ was under no obligation to include a limitation in concentration, persistence, and pace in the hypothetical question posed to the vocational expert, as Armstrong asserts.  At Steps 2 and 3, the ALJ found Armstrong has moderate difficulties regarding concentration, persistence, or pace.  The ALJ was explicit that his finding at this stage "was not a residual functional capacity assessment" ("RFC") and that the subsequent RFC findings at Steps 4 and 5 required a more detailed assessment. (Tr. 13). At Steps 4 and 5, the ALJ noted the diagnosis of depression and included the following in his RFC assessment: "Based on a diagnosis of depression, the claimant would have the ability to perform work in a setting where: interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote, few variables, little judgment, and the supervision required is simple, direct and concrete." (Tr. 14).  Thus, the ALJ took into account Armstrong's mental limitations in both his RFC analysis and in the question submitted to the vocational expert.

5

Substantial evidence supports the ALJ's RFC determination, and he was not mandated to include a limitation tied to Armstrong's 2010 difficulties in concentration, persistence, and pace.

**Assessment of Armstrong's seizures:** Citing *Smith v. Barnhart*, 435 F.3d 926 (8th Cir. 2006), Armstrong alleges the ALJ incorrectly assessed her seizures, requiring remand of the case. In that case, the plaintiff suffered from seizures, among other impairments. The ALJ's decision that Smith could perform light work without any limitation due to the frequency and severity of her seizures was reversed and remanded. There are key factual distinctions between Smith and Armstrong. Five days before the ALJ's ruling, Smith's treating neurologist, noting she was experiencing more intense seizures, diagnosed her with uncontrolled seizure disorder and increased her dosage of Dilantin. In addition, Smith was under physician's orders not to use the stove or drive for one year due to her seizures. In general, Smith had doctor-imposed restrictions, was actively involved in treatment, and her seizures were trending toward, or already, uncontrolled. Armstrong, to the contrary, testified to using medication effective in controlling her seizures, received little care during the relevant time period, and has re-entered the work force on a part-time basis. In addition, the ALJ included accommodations (e.g., no work involving unprotected heights, dangerous moving machinery, operation of motor vehicles, and use of firearms) for Armstrong's seizure disorder. Finally, unlike in *Smith*, Armstrong had no physician-imposed limitations. For the foregoing reasons, we find *Smith* does not dictate the result Armstrong urges. Rather, we find substantial evidence supports the ALJ's discussion and treatment of Armstrong's seizure disorder.[2]

---

[2] Armstrong also argues the ALJ should have given more credit to three third-party reports about the frequency and severity of her seizures. (Tr. 254-259). These reports, however, are of little or no value since they were executed in May 2010, well before the relevant period for this case. The ALJ did not err in this regard.

In summary, we find the ultimate decision of Colvin was supported by substantial evidence. We are mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Colvin is affirmed and Armstrong's complaint is dismissed with prejudice.

IT IS SO ORDERED this 20th day of April, 2016.

_____
UNITED STATES MAGISTRATE JUDGE